## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ANGEL L. DELVALLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CIVIL ACTION** |
| v. | ) | |
| | ) | **No. 14-2496-JWL** |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act.  42 U.S.C. §§ 416(i) and 423 (hereinafter the Act).  Finding no error in the Commissioner's decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

## I.       Background

Plaintiff applied for DIB, alleging disability beginning May 19, 2010.  (R. 10, 122, 136).  Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits.  Plaintiff argues that the Administrative Law Judge's (ALJ) residual functional capacity (RFC) assessment is unsupported by

substantial record evidence because she erred in weighing the opinion of Plaintiff's treating physician, Dr. King, questioned the diagnosis of fibromyalgia, and provided an inadequate narrative discussion.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner then evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

3

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds no error in the decision at issue.

## II.   Discussion

Plaintiff argues that when the ALJ discounted Dr. King's opinion--finding that Plaintiff's symptoms were "pretty mild" until mid 2013 and that there is no "credible medical reason why the claimant's worst physical symptoms cannot be controlled"--she was erroneously "substituting her own 'medical expertise' for that of a treating physician."  (Pl. Br. 8) (quoting R. 19; and citing Kemp v. Bowen, 816 F.2d 1469, 1476 (10th Cir. 1987)).  Plaintiff quotes an Eighth Circuit case for the proposition that the symptoms of fibromyalgia are variable and unpredictable and that fibromyalgia has the potential to be disabling, and argues that the ALJ was incorrect to suggest that Plaintiff's symptoms can be controlled, and that the ALJ did not give a legitimate reason to discount Dr. King's opinion.  (Pl. Br. 8) (quoting Brosnahan v. Barnhart, 336 F.3d 671, 678 (8th Cir. 2003).  She also argues that the ALJ did not consider the statutory factors for evaluating physicians' opinions, id. at 11, and that the ALJ "could . . . have," and by implication should have, recontacted Dr. King or sought consultative expertise regarding the frequency of emptying or changing ileostomy bags.  Id. at 11-12.  She argues that the ALJ "seems to question the diagnosis of fibromyalgia" (Pl. Br. 9), that Plaintiff's severe

problems were manifested at least by July 26, 2012, not mid-2013 as found by the ALJ, id., and that in her narrative discussion, the ALJ failed to identify which RFC limitations are associated with each of her impairments of obesity, diabetes mellitis, and history of colitis with colectomy and ileostomy.  (Pl. Br. 13-14).

The Commissioner argues that the ALJ properly discounted Dr. King's opinion because the opinion was not supported by record evidence.  (Comm'r Br. 8-9).  She argues that the limitations asserted in Dr. Kings opinion are not supported by his treatment notes because he "did not note any functional limitations in his treatment notes," that Dr. King last treated Plaintiff nine months before he formulated his opinion regarding Plaintiff's limitations, and that other record evidence during that nine-month period conflicts with Dr. King's opinion.  Id. at 10-11.  The Commissioner also argues that the record evidence supports the ALJ's evaluation of fibromyalgia, and that Plaintiff did not meet her burden to prove the allegedly disabling severity of her pain.  Id. at 11-12.  She points out that no medical providers suggested Plaintiff had problems with care of her ileostomy bag, and argues that the evidence was sufficient for the ALJ to make a determination in that regard without seeking medical expertise.  Id. at 12.  Finally, she argues that Plaintiff's claim that the ALJ failed to identify RFC limitations related to each impairment does not demonstrate an insufficiency in the ALJ's analysis.  Id. at 13-14.

In her Reply Brief, Plaintiff once again asserts that the ALJ improperly substituted her opinion for that of Dr. King and improperly "picked and chose" through Dr. King's opinion, adopting only those portions favorable to a finding of non-disability.  (Reply 3)

5

(citing Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004); and Langley v.

Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004)).  She argues that the Commissioner did

not point to any regulatory factors considered by the ALJ but provided a post hoc

argument that Dr. King did not state limitations in his treatment notes.  Id. at 4.  Plaintiff

reiterates her arguments from her Brief, and explains how in her view the evidence should

have been viewed by the ALJ to make a finding of disability.

### A.      Standard for Evaluating a Treating Physician's Opinion

A treating physician's opinion about the nature and severity of a claimant's

impairments should be given controlling weight by the Commissioner if it is well

supported by clinical and laboratory diagnostic techniques and if it is not inconsistent

with other substantial evidence in the record.  Watkins v. Barnhart, 350 F.3d 1297, 1300-

01 (10th Cir. 2003); 20 C.F.R. § 404.1527(c)(2).  When a treating physician opinion is

not given controlling weight, the ALJ must nonetheless specify what lesser weight she

assigned it.  Robinson, 366 F.3d at 1083.

A treating source opinion which is not entitled to controlling weight is "still

entitled to deference and must be weighed using all of the factors provided in 20 C.F.R.

§ 404.1527."  Watkins, 350 F.3d at 1300.  Those factors are:  (1) length of treatment

relationship and frequency of examination; (2) the nature and extent of the treatment

relationship, including the treatment provided and the kind of examination or testing

performed; (3) the degree to which the physician's opinion is supported by relevant

evidence; (4) consistency between the opinion and the record as a whole; (5) whether or

not the physician is a specialist in the area upon which an opinion is rendered; and

(6) other factors brought to the ALJ's attention which tend to support or contradict the

opinion.  Id. at 1301; 20 C.F.R. § 404.1527(c)(2-6); see also Drapeau v. Massanari, 255

F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52

F.3d 288, 290 (10th Cir. 1995)).  However, the court will not insist on a factor-by-factor

analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any

subsequent reviewers the weight the adjudicator gave to the treating source's medical

opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th

Cir. 2007) (quoting Watkins, 350 F.3d at 1300).

       After considering the above factors, the ALJ must give good reasons in her

decision for the weight she ultimately assigns the opinion.  If the ALJ rejects the opinion

completely, she must give specific, legitimate reasons for doing so.  Watkins, 350 F.3d at

1301.

       ## B.       The ALJ's Findings

       The ALJ noted that Plaintiff "has been under the continual outpatient medical care

of W. Russell King, M.D., since at least May 2009."  (R. 16).  She summarized Plaintiff's

medical care from June 2009 through June 10, 2013, including Dr. King's treatment

notes.  (R. 16-19).  She noted that on April 13, 2013, Dr. King provided his opinion

regarding Plaintiff's limitations and she summarized that opinion.  She acknowledged that

"[t]he opinion of a treating physician, such as Dr. King, is normally entitled to great

weight," but noted that the opinion may be discounted for specific reasons.  (R. 18).  She

then explained the weight she accorded to Dr. King's opinion:

> Dr. King's assessment in Exhibit 16F is credible, but only up to a point.
> His opinions about standing, walking, sitting, lifting, carrying, climbing,
> balancing, stooping, kneeling, crouching, and crawling are pretty consistent
> with the medical evidence, but his ones [sic] about limited upper extremity
> use for pushing or pulling, having atmospheric and environmental
> restrictions and severe fatigue, and missing work three days a week or
> more[1] because of various medical impairments, are not.  The claimant may
> have had very intense joint pain and/or fatigue on occasion, but most of
> these severe kinds of complaints did not emerge until the middle part of
> 2013 after being pretty mild and stable before that, and there is no credible
> medical reason why the claimant's worst physical symptoms cannot be
> controlled.  Furthermore, there is no medical evidence that Dr. King had
> even seen the claimant since July 2012, and at that time the claimant told
> him that Tramadol was controlling her pain, and that she was able to remain
> active for at least a few hours a day.
>
> I am limiting the claimant to a fairly narrow range of sedentary work, which
> is more restrictive (i.e., more favorable to the claimant's disability case)
> than what even Dr. King suggested in Exhibit 16F, and than as indicated in
> assessments done by State Agency medical examiners (Exhibit 4A, pp. 7-8;
> Exhibits 9F, 19F).  As stated in the above paragraph, the claimant did not
> begin alleging severely restrictive joint pain and fatigue until about June
> 2013.  As recently as January 2013, she had been exercising each day and
> preparing meals at home.  As I have stated above, there is no good medical
> reason for believing that the claimant has any physical symptoms, including
> pain or fatigue, or mental symptoms, that are uncontrollable to the point
> where she cannot do full-time work at even a sedentary level of exertion.
> This is true whether her joint pain is fibromyalgia, or neuritis or myalgia.

(R. 18-19).

## C.    Analysis

---

[1]This is quite apparently a typographical error, because Dr. King opined that
Plaintiff would miss work more than three times a <u>month</u>.  (R. 572).

Plaintiff's argument that the ALJ erred in her bases for discounting Dr. King's opinion fails for several reasons. First, her argument that "[i]f Plaintiff's symptoms could be controlled, the physicians would certainly have controlled them" (Pl. Br. 8), is merely speculation which says nothing about the ALJ's bases for discounting the opinion. Plaintiff points to two of the reasons for discounting Dr. King's opinion and argues that the ALJ is substituting her lay opinion for that of a medical expert. But, she does not argue specific error in those reasons. She does not point to record evidence that her symptoms were <u>not</u> "pretty mild and stable" before mid-2013 as the ALJ found (R. 19), nor does she point to any medical reason contained in the record evidence why her "worst physical symptoms cannot be controlled" as the ALJ found. (R. 19). Plaintiff suggests that her report of stamina for only a few hours of activity in July 2012 (R. 516) demonstrates that her severe complaints began before mid-2013, as the ALJ found. Plaintiff's argument misses the point of the ALJ's RFC assessment for a limited range of <u>sedentary</u> work. Sedentary work requires only about two hours of standing or walking in a workday, and no activity beyond that. In context, stamina for a few hours of activity in July 2012 is not inconsistent with "pretty mild and stable" symptoms before mid-2013.

As Plaintiff's Brief suggests, an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." <u>Keyes-Zachary v. Astrue</u>, 695 F.3d 1156, 1166 (10th Cir. 2012) (quoting <u>Hardman v. Barnhart</u>, 362 F.3d 676, 681 (10th Cir. 2004)); <u>see also</u>, <u>Carpenter v. Astrue</u>, 537 F.3d 1264, 1265 (10th Cir. 2008) (same). Nor may she "pick and choose through an

uncontradicted medical opinion, taking only the parts that are favorable to a finding of

nondisability." Chapo v. Astrue, 682 F.3d 1285, 1292 (10th Cir. 2012) (quoting Haga v.

Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007); see also Hamlin v. Barnhart, 365 F.3d

1208, 1219 (10th Cir. 2004) ("ALJ may not pick and choose which aspects of an

uncontradicted medical opinion to believe, relying on only those parts favorable to a

finding of nondisability"); Robinson, 366 F.3d at 1083 ("ALJ is not entitled to pick and

choose from a medical opinion, using only those parts that are favorable to a finding of

nondisability").  The salient feature of these cases is that an ALJ's decision is to be based

upon all of the record evidence.  She may not ignore evidence which is contrary to her

decision.  And, she may not search through an uncontradicted medical opinion and

exclude those portions contrary to her decision.

   That is not what happened here.  Dr. King's opinion was not uncontradicted, and

the ALJ explained what in the record was contrary to that opinion.  She did not ignore the

portions of Dr. King's opinion which were contrary to her decision.  She addressed them

and explained why she discounted them.  That is her duty as an adjudicator.

   As Plaintiff also suggests, the Tenth Circuit has held that an ALJ oversteps her

bounds when she substitutes her medical judgment for that of a treating physician.

Winfrey v. Chater, 92 F.3d 1017, 1022 (10th Cir. 1996).  In Winfrey, Dr. Spray, a clinical

psychologist, treated Mr. Winfrey, administered a battery of tests including the Minnesota

Multiphasic Personality Inventory-2 (MMPI-2), and diagnosed him with, among other

diagnoses, somatoform disorder.  Id. at 1021.  Nonetheless, the ALJ found that Mr.

10

Winfrey did <u>not</u> have a somatoform disorder, in part, because <u>the ALJ</u> was of the opinion "that Dr. Spray improperly used the MMPI-2 as a basis for the diagnosis."  <u>Id.</u> at 1022. The court noted that "the ALJ clearly overstepped his bounds when he substituted his medical judgment for that of Dr. Spray, by determining that the results of the MMPI-2 test were not an adequate basis on which to make a diagnosis."  <u>Id.</u> (citing <u>Kemp</u>, 816 F.2d at 1476).  In <u>Kemp</u>, the court noted that "there was not even evidence from a consulting physician retained by the agency to contradict the medical diagnosis, findings, and conclusions of her treating physician, Dr. Brown.  While the ALJ is authorized to make a final decision concerning disability, he can not interpose his own 'medical expertise' over that of a physician, especially when that physician is the regular treating doctor for the disability applicant."  816 F.2d at 1476.  As stated in a more recent case, "[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and <u>not due to his or her own credibility judgments, speculation or lay opinion</u>."  <u>McGoffin v. Barnhart</u>, 288 F.3d 1248, 1252 (10th Cir. 2002) (emphasis in original).

The court in <u>Kemp</u> recognized that the ALJ "is authorized to make a final decision concerning disability."  Indeed, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."  <u>Howard v. Barnhart</u>, 379 F.3d 945, 949 (10th Cir. 2004).  "And the ALJ's RFC assessment is an administrative, rather than a medical determination."  <u>McDonald v. Astrue</u>, 492 F. App'x 875, 885 (10th Cir. 2012) (citing

11

Social Security Ruling (SSR) 96-05p, 1996 WL 374183, at *5 (July 1996)).  Because

RFC assessment is made based on "all of the evidence in the record, not only the medical

evidence, [it is] well within the province of the ALJ."  Dixon v. Apfel, No. 98-5167, 1999

WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. § 404.1545(a).  Moreover, the

final responsibility for determining RFC rests with the Commissioner.  20 C.F.R. §§

404.1527(e)(2), 404.1546.

        In this case, the ALJ made the final decision regarding disability, and she made an

RFC assessment.  Although she discounted part of Dr. King's opinion, she did not

substitute her "medical expertise" for that of Dr. King.  Rather, as quoted above she

considered and summarized all of Dr. King's opinion, discounted part of it, and explained

her evidentiary basis for doing so, including relying in part on the assessments provided

by the state agency medical examiners.

        Plaintiff's argument that the symptoms of fibromyalgia are variable and

unpredictable and that the ALJ was, therefore, incorrect to suggest that Plaintiff's

symptoms can be controlled, fares no better.  That fibromyalgia symptoms are variable

and unpredictable says nothing regarding whether they might be controlled.  And as noted

above, Plaintiff points to no evidence in this record that Plaintiff's symptoms cannot be

controlled.  In fact, as the ALJ noted, when Plaintiff last saw Dr. King in July 2012, she

told him that Tramadol reduces her pain and that she has the stamina for a few hours of

activity.  (R. 516).  And, none of the cases Plaintiff cites stands for the proposition that

fibromyalgia symptoms can never be controlled.

The court fails to see the basis for Plaintiff's argument that the ALJ did not consider the regulatory factors for evaluating medical opinions.  As noted above, a factor-by-factor analysis is not required so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham, 509 F.3d at 1258. The decision here makes clear the weight accorded to Dr. King's opinion and the reasons for that weight.  Moreover, from the decision it is clear that the ALJ considered the regulatory factors, and specifically discussed the length of treatment relationship, the nature and extent of the treatment relationship, the treatment provided, the degree to which the physician's opinion is supported by relevant evidence, and the consistency between the opinion and the record as a whole.

As to Plaintiff's speculation that the ALJ questioned the diagnosis of fibromyalgia, she shows no error because she has shown no prejudice.  The ALJ found that Plaintiff has severe impairments including "fibromyalgia or myalgia."  (R. 12).  And, when assessing Plaintiff's RFC she explained that "there is no good medical reason for believing that the claimant has any physical symptoms, including pain or fatigue, or mental symptoms, that are uncontrollable to the point where she cannot do full-time work at even a sedentary level of exertion.  This is true whether her joint pain is fibromyalgia, or neuritis or myalgia."  (R. 19).  As noted above, Plaintiff points to no evidence that her symptoms are uncontrollable, and, failing to show error in the ALJ's evaluation of Dr. King's opinion, she has not shown that she cannot perform the limited range of sedentary work assessed.

13

In her decision, the ALJ discussed Plaintiff's ileostomy bag and her testimony regarding the cleaning of it. (R. 15, 19). She noted Plaintiff's hearing testimony that she had to empty and clean the bag "at least once an hour, or every 30 minutes after she ate," and that "total bag care chores" took 3-4 hours a day. (R. 15). She found that Plaintiff's allegations of symptoms "are not entirely credible," and on the way to that conclusion, she found that there is no evidence either that Plaintiff has "to change or clean her bag nearly as often as she claimed at the hearing," or that she needed "to spend three or four hours per day cleaning her colostomy [sic] bag." (R. 19). Plaintiff argues that "[r]eadily available medical literature . . . confirms the ileostomy bag will need to be emptied when it is 'about 1/3 full, and change it about every 2 to 4 days, or as your nurse tells you.'" (Pl. Brief 11-12) (citing http://www.nlm.nih.gov/medlineplus/ency/patientinstructions/ 000204.html) (not found by the court on Oct. 6, 2015). Plaintiff also suggests that the ALJ should have contacted "Plaintiff's physicians or a consultative examiner as to how often the ileostomy bag needed to be emptied and/or changed." Id. at 12. Once again, Plaintiff's argument misses the point of the ALJ's decision. The point was not how often an ileostomy bag needs to be cleaned, but rather, that Plaintiff--who was represented before the Commissioner--did not present evidence supporting her allegations regarding her ileostomy bag. The internet link to which Plaintiff cited in her brief no longer works and a copy was not included with her brief, so the court was unable to confirm her assertion of facts. Nevertheless, assuming Plaintiff is correct that an ileostomy bag must be changed when it is about 1/3 full or every two to four days, that fact tends to support

the inference from each of the ALJ's findings; that the bag does not need to be emptied and cleaned every hour (or ½ hour when Plaintiff eats), and that bag care chores do not require three to four hours every day.  Plaintiff has not shown error in these findings, or that the ALJ should have sought expert testimony regarding the frequency (or the duration) of ileostomy bag care.

Plaintiff is correct that the Commissioner issued SSR 96-8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits," and that ruling includes narrative discussion requirements for the RFC assessment.  West's Soc. Sec. Reporting Serv., Rulings 143, 149 (Supp. 2015).  The discussion must cite specific medical facts and nonmedical evidence describing how the evidence supports each conclusion, discuss how the plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform.  Id. at 149. The discussion must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved.  Id.  The narrative discussion must include consideration of the credibility of plaintiff's allegations of symptoms and consideration of medical opinions regarding plaintiff's capabilities.  Id. at 149-50.  If the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why she did not adopt the opinion.  Id. at 150.

However, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion."  Chapo v. Astrue, 682 F.3d

15

1285, 1288 (10th Cir. 2012) (citing Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir.

2004)); Wall, 561 F.3d at 1068-69).  The narrative discussion required by SSR 96-8p in

an RFC assessment does not require citation to a medical opinion, or even to medical

evidence in the administrative record for each RFC limitation assessed.  Castillo v.

Astrue, No. 10-1052, 2011 WL 13627, *11 (D. Kan. Jan. 4, 2011).  "What is required is

that the discussion describe how the evidence supports the RFC conclusions, and cite

specific medical facts and nonmedical evidence supporting the RFC assessment."  Id.  See

also, Thongleuth v. Astrue, No. 10-1101-JWL, 2011 WL 1303374, *13 (D. Kan. Apr. 4,

2011).  There is no need in this case, or in any other, for the Commissioner to base the

limitations in his RFC assessment upon specific statements in medical evidence or

opinions in the record.  Conversely, the ALJ need not state which RFC limitation assessed

is attributable to each impairment alleged by the claimant.  Rather, she must explain how

the record evidence supports the limitations assessed.

     Here, the ALJ's narrative discussion occupies pages six through twelve of her

decision.  (R. 15-21).  In that discussion, she cited and summarized specific medical facts

and nonmedical evidence in the administrative record, and she described how that

evidence supports her RFC assessment.  She found that Plaintiff is capable of sitting

about six hours in a workday, standing and/or walking about two hours in a workday,

lifting and carrying a maximum of ten pounds at a time, and frequently lifting and

carrying articles such as docket files, ledgers, and small tools.  (R. 15).  She found that

Plaintiff is prohibited from kneeling, crouching, or crawling, or climbing ladders, ropes,

or scaffolds, that she may occasionally balance, stoop, and climb ramps or stairs, and that she may have no concentrated or excessive exposure to unprotected heights or dangerous moving machinery.  Id.

Other than the bare argument that the ALJ failed to identify which functional limitations are associated with obesity (or diabetes mellitis, or ulcerative colitis), Plaintiff does not point to any limitation which was caused by any of these impairments which was not included in the RFC assessment.  She has not shown error in the ALJ's RFC assessment.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 13th  day of October 2015, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

17